UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DANIEL JAMES MAGILL,

      Plaintiff,

v.                              Case No:   8:14-cv-2426-T-DNF

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____

## OPINION AND ORDER

Plaintiff, Daniel James Magill, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits ("DIB").  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a Joint Memorandum (Doc. 17) setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.    Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

**A.  Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382a(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do his previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

### B.  Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion.  Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).  However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability.  20 C.F.R. §§ 404.1520, 416.920.  At step one, the claimant must prove that he is not undertaking substantial gainful employment.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i).  If a claimant is engaging in any substantial gainful activity, he will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments.  *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii).  If the claimant's impairment or combination of impairments does not significantly limit his physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled.  20 C.F.R. § 1520(c).

At step three, the claimant must prove that his impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii).  If he meets this burden, he will be considered disabled without consideration of age, education and work experience.  *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that his impairment meets or equals one of the impairments listed in Appendix 1, he must prove that his impairment prevents him from performing his past relevant work.  *Id*. At this step, the ALJ will consider the claimant's residual functional capacity ("RFC") and compare it with the physical and mental demands of his past relevant work.  20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f).  If the claimant can still perform his past relevant work, then he will not be found disabled.  *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience.  *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, he will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant.  *Allen v. Sullivan*, 880 F.2d 1200,

1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

### C.  Procedural History

Plaintiff filed an application for a period of disability and DIB on April 29, 2011, alleging a disability commencing September 27, 2007. (Tr. 12). Plaintiff's applications were denied initially and upon reconsideration. Plaintiff requested an administrative hearing, which was held on December 19, 2012, before Administrative Law Judge B.T. Amos ("the ALJ"). (Tr. 12, 23-45). On January 10, 2013, the ALJ issued an unfavorable decision finding that Plaintiff retained the RFC to perform a full range of light work through the date last insured of September 30, 2011. (Tr. 9-18). Plaintiff appealed the ALJ's decision and, on August 4, 2014, the Appeals Council denied Plaintiff's request for review. (Tr. 1). Plaintiff initiated this action by filing a Complaint (Doc. 1) on September 25, 2014.

### D.  Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 27, 2007, his alleged onset date, through September 30, 2011, his date last insured. (Tr. 14). At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disease in the thoracic and lumbar spines. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or

medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b). *Id.*  At step four, the ALJ found that Plaintiff is unable to perform his past relevant work as a carpenter.  (Tr. 17).  At step five, the ALJ relied upon the Grids to find that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  *Id.*  The ALJ concluded that Plaintiff was not been under a disability from September 27, 2010, through September 30, 2011.  (Tr. 18).

## II.      Summary of Medical Evidence

The medical record reveals the following.  Between July 2008 through October 2008, Plaintiff was treated by Dr. Chakote  and Dr. Rabinovici for back and shoulder pain. (Tr. 176-193).  On July 22, 2008, Plaintiff  presented with lower back pain. ( Tr. 176-177).   He hurt his back at work on September 27,  2007 while lifting a 350 pound column. (Tr. 403).   His pain was aggravated by cold weather  and bending and he was prescribed Percocet. (Tr. 176-177).  The following week, Plaintiff  was again treated for lower back pain. ( Tr. 180, 199-200). Examination revealed tenderness of  his lower back and he was diagnosed with painful lower back, lumbar degenerative disc  disease with radiculopathy.   A lumbar spine x-ray showed degenerative joint disease and he was  told to continue in  physical  therapy  and was  prescribed Naprosyn.  *Id.* Plaintiff reported moderate to severe pain in the upper and lower back as of August 2008.  ( Tr. 181).   Progress notes from September 2008 revealed an unchanged examination.  (Tr. 183, 193).    Physical therapy was continued and Percocet was prescribed.  *Id.*  He had a mild left limp. Dr. Rabinovici advised Plaintiff to continue current pain management, not lift anything

heavy, and opined that he was unable to work. *Id.* On October 29, 2008, Plaintiff reported pain in his left shoulder as well as low back pain. (Tr. 185). Physical therapy was continued. *Id.*

During this time, from August through October 2008, Dr. Rabinovici, a neurologist, treated Plaintiff. (Tr. 189-202). On August 5, 2008, Plaintiff presented with back pain. (Tr. 201-202). He described that his work accident occurred while he held a crate with both hands at shoulder level with assistance, at which point the other person let go causing the crate to fall on his right shoulder. He reported severe neck pain and numbness running into the left arm, severe upper and low back pain, and moderately severe left shoulder pain. His low back pain occasionally ran down the left leg to the ankle. Plaintiff noticed swelling below the left knee. Examination revealed Plaintiff was in mild acute distress and appeared to have a mild left limp. The left shoulder was mildly positive for pain with movement of the arm about the shoulder and straight leg raising was positive at 30 degrees bilaterally with crossover. He was diagnosed with thoracic and lumbar sprain/strain with soft tissue injury, rule out disc herniation. Dr. Rabinovici opined that Plaintiff was unable to work. *Id.* On October 28, 2008, an EMG nerve conduction study from August 19, 2008 was reviewed and revealed a mild chronic left lumbar radiculopathy. (Tr. 195-98). Dr. Rabinovici found that Plaintiff's motor strength was full 5/5 in all muscle groups tested. (Tr. 189, 193-94, 202). Dr. Rabinovici advised Plaintiff to continue his current pain management and again reaffirmed that Plaintiff was unable to work. *Id.*

An MRI of the thoracic spine was performed on October 30, 2008. (Tr. 191). The MRI showed multi-level thoracic endplate spurring, disc desiccation change, and shallow disc bulges at T8-9, T10-11 and T11-12 which impressed upon the thecal sac. *Id.* An MRI of the lumbar spine was taken on October 31, 2008. (Tr. 192). The MRI revealed a smooth central

disc bulge L4-5 but without herniation identified. *Id*. Plaintiff attended physical therapy  from August 2008 through November 2008.    ( Tr. 187).

Due to neck, back, and shoulder pain, Plaintiff was treated from December 2008  through June 2009 at Simon Chiropractic Clinic. (Tr. 323-330).  He continued to report neck,  back, and shoulder pain and current treatment with  TENS unit, pain management, and  medications. Plaintiff was diagnosed with chronic dorsal pain and chronic low back pain  attended by intermittent left lower extremity extension radiculopathy. Dr. Chakote continued  to treat Plaintiff from July 2009 through October 2009. (Tr. 178-179, 184, 188).   His back  pain was aggravated by movement and bending and was moderate to severe in nature  according to progress notes dated July 20, 2009.   (Tr. 178).   Thoracic spine, lumbar spine, and  sacroiliac joint x-rays all showed degenerative joint disease. (Tr. 188).  Plaintiff described  persistent low back pain as of September 21, 2009 and continued with his medications and  physical therapy. (Tr. 179).   Progress notes dated October 27, 2009 revealed that Plaintiff's  pain was worsened by movement, lifting, or coughing.   ( Tr. 184).

Dr. Bram Riegel treated Plaintiff from February 2010 through December 2010. (Tr.  209-213, 256-288, 343). Plaintiff reported undergoing an IME with Dr. Wolff an  orthopedic surgeon who recommended a sedentary work status. Dr. Penge, a chiropractor,  who also performed an IME, recommended sedentary work status. Plaintiff was currently  under the care of Dr. Simon and underwent chiropractic care two times a week. He currently suffered from right sided mid  back pain and right parascapular pain and felt as though a rib  on the right intermittently popped out and needed to be pushed back in. His low back pain  intermittently radiated down both lower extremities and he was currently taking Percocet.   Prior records and imaging studies were reviewed and examination revealed varying degrees  of   tenderness   and   muscle   spasms,

overlying thoracic paraspinals bilaterally, right parascapular muscle group, lumbosacral paraspinals bilaterally, and PSIS bilaterally with soft tissue palpation. He was diagnosed with cervical, strain, improved, thoracic, lumbar and right parascapular strain partially improved. He was referred for MRIs and his Percocet was refilled.

He was advised to be limited to a sedentary work status with a lifting limit of ten pounds and no repetitive bending, stooping, squatting, or exposure to vibration with position changes as needed. He could not return to work as a high rise carpenter. Dr. Riegel further opined that Plaintiff had a moderate partial disability based on New York state guidelines. *Id.*

Plaintiff rated his pain as being a 5 on a scale of 0-10. (Tr. 266). Dr. Riegel's neurological exam showed that Plaintiff had full 5/5 motor strength bilaterally, grossly intact sensation, and negative straight leg raising (SLR) testing bilaterally. (Tr. 267). Examination also revealed varying degrees of tenderness and muscle spasms, overlying thoracic paraspinals bilaterally, right parascapular muscle group, lumbosacral paraspinals bilaterally, and PSIS bilaterally with soft tissue palpation. Dr. Riegel reviewed a radiologist's report describing thoracic MRI dated October 29, 2008. (Tr. 267). The report described degenerative changes affecting the thoracic spine. He also reviewed a radiologist's report describing a lumbar spine MRI dated October 30, 2008. The report described a central disc bulge at L4-5. *Id.* The actual MRI lumbar spine findings appear at Tr. 192 and reflect a 3mm smooth central disc bulge as evidenced by loss of normal concave contour of the posterior margins of the L4-5 disc without extruded fragment. (Tr. 192). No focal herniations were identified. The MRI of the thoracic spine reflected multi-level thoracic endplate spurring and disc dessication change. (Tr. 191). In addition, shallow disc bulges are evident at T8-9, T10-11 and T11-12, which impress upon

the thecal sac. There was no evidence of herniated nucleus pulposus, central canal or neural foraminal stenosis. ( Tr. 191).

Plaintiff was still experiencing low back pain and mid back and right parascapular pain as of March 15, 2010. ( Tr. 261-262).   Imaging studies from February 17, 2010 showed endplate abnormalities at T1-T2 consisting of increased T1 and T2 signal seen near the T11-  T12 intervertebral disc space. A repeat MRI of the lumbar spine showed disc bulging at L4-5 and disc dessication at L4-5. He was told to continue on Percocet and his work status remained unchanged. *Id*.

At Dr. Riegel's request, on March 15, 2010, Dr. W. Campbell Walker reviewed the lumbar spine MRI from Fenruary 17, 2010, specifically for the L3-4 and L4-5 disc levels. At L3-4, he agreed that there was facet hypertrophy. Dr. Walker stated that the margin of the disc appeared relatively concave. Thus, there was no bulge or protrusion or herniation. At L4-5, there was a mild concentric annular bulge minimally indenting the ventral margin of the thecal sac.  There was also facet hypertrophy and disc dessication.  Thecal sac dimensions  did not constitute a cross-sectional central stenosis. Although the right neural foramen was  slightly more impacted than the left by facet hypertrophy and it did appear to reach the level  of stenosis.

On March 16, 2010, Dr. Riegel opined that Plaintiff's cervical impairment had  resolved. (Tr. 260-61).  Plaintiff underwent a Maximum Medical Improvement ("MMI") evaluation.  (Tr. 260).  However, by August 25, 2010, Dr. Riegel indicated that Plaintiff was again suffering from new onset of left  sided neck pain and left shoulder blade pain as well as left shoulder pain, most likely not related to the work-  related injury on September 27, 2007. ( Tr. 257).   Dr. Riegel observed that Plaintiff was 30 months status post work  related injury and appeared to have reached a plateau with conservative care and could be  placed at MMI. Plaintiff's thoracic, right

parascapular, and lumbar condition were all directly related to the work-related injury on September 27, 2007. Plaintiff's condition met the requirements of a moderate partial disability based on New York State Disability guidelines. He was limited to a sedentary work status, with a lifting limit of 10 pounds, no repetitive bending, stooping, squatting, or exposure to vibration, and position changes as needed. He could not return to work as a high rise carpenter. *Id.*

In April 2010, Plaintiff told Dr. Riegel that he still had low back pain but reported that his low back pain continued to improve and that chiropractic treatment had resulted in "significant improvement." (Tr. 347). From May 10, 2010 to June 2010, Plaintiff was seen by Dr. Riegel. (Tr. 273-274, 276-278). His work status remained unchanged and he was told to continue on Percocet and treatment with Dr. Simon. *Id.* Examination on July 9, 2010 revealed a flare up of his mid and low back pain as well as neck and shoulder pain. (Tr. 273-274). Examination revealed tenderness and muscle spasm over the left cervical paraspinals and left trapezial muscle group. He was given an injection of Toradol and prescribed Percocet and Toradol. *Id.* After Dr. Riegel prescribed neuromuscular therapy (NMT) in July 2010, Plaintiff declined to attend the NMT because he was too busy. (Tr. 258, 273, 282, 284, 288, 332, 334, 340, 381, 447-48). Dr. Riegel's progress note of August 25, 2010 reflects that Plaintiff may have been attending NMT at Dr. Simon's office so Dr. Riegel was canceling his prescription for NMT. (Tr. 258). Plaintiff described increased neck pain as of August 2010. (Tr. 270-271). On October 7, 2010, Dr. Riegel stated it was his understanding that the worker's compensation insurance never authorized an NMT referral. (Tr. 288). On August 11, 2010, Plaintiff returned for reevaluation with Dr. Riegel. (Tr. 270). He was presently having a flare up of neck pain that started about a month earlier. He had been seeing Dr. Simon once per week which had been effective. Examination revealed cervical paraspinal tenderness and spasms and he was

diagnosed with cervical sprain and myofascial pain syndrome. He also reported radiation of pain down the left arm and was prescribed Soma and Percocet. *Id.*

Cervical spine x-rays taken in August 2010 showed straightening of the cervical lordosis, disc space narrowing at C3-4, disc space narrowing and anterior spondylosis5 at C5-6. (Tr. 257-258). A shoulder x-ray revealed an osteophyte6 projecting off the inferior surface of the AC joint. He was told to stop the Soma, was started on Flexeril, and was advised to increase his Percocet dose. *Id.* Despite the increased medication, progress notes dated September 24, 2010 still revealed occasional numbness and tingling as well as continued back and shoulder pain. (Tr. 343). Plaintiff told Dr. Riegel that although he still had bilateral shoulder pain and tenderness, he had been doing fairly well and was not taking any medications/using Percocet sparingly. *Id.* Dr. Riegel found full left shoulder range of motion but he did have tenderness to palpation overlying the left cervical paraspinals muscles as well as the lumbar paraspinals bilaterally as well as mildly decreased lumbar spine range of motion. *Id.* Dr. Riegel noted that Plaintiff was doing well, and he did not prescribe any pain medications but advised that he continue on Percocet. *Id.* Plaintiff fell and reinjured his low back as of October 7, 2010. He was told to increase his Percocet dose, to stop the Flexeril and Marinol, and was started on Zanaflex. *Id.* Plaintiff told Dr. Riegel that he no longer had insurance in November 2010. (Tr. 285). He was prescribed Percocet. *Id.* On December 22, 2010, he reported a flare up of left shoulder blade pain. (Tr. 284). He had a moderate to high pain level and his Percocet dosage was increased. *Id.*

Meanwhile, Plaintiff continued treatment with at Simon Chiropractic Clinic for neck, back, and shoulder pain at the request of Dr. Riegel from January 2010 through May 2011. (Tr. 293-322). During his entire course of treatment, Dr. Simon noted on numerous occasions that

Plaintiff's pain, muscle spasms, and tenderness were only mild or mild-to-moderate. (Tr. 301, 303-05, 307-09, 313-18, 322-23, 325-26). On January 14, 2011, Plaintiff saw Dr. Simon and reported moderate pain despite being on Percocet. (Tr. 293). He had moderate pain levels on multiple occasions. (Tr. 292-296, 297, 299-300, 302, 306, 307-308, 310, 312, 315, 319-321). Once, he reported moderate to severe pain. (Tr. 311).

Dr. Riegel continued to treat Plaintiff from March 2011 through June 2011. (Tr. 255, 282, 379-380, 449). As of March 24, 2011, Plaintiff reported his pain as a seven out of ten. (Tr. 282). The following month, on April 26, 2011, he described mid and low back pain. (Tr. 255). He had varying degrees of tenderness and muscle spasms on examination. *Id.* Plaintiff had a flare-up of his back pain in May 2011. (Tr. 332). He rated his pain as a ten out of ten. On examination, Plaintiff had pronounced tenderness and muscle spasms over the lumbar area. He was started on a Medrol dosepak. *Id.* Progress notes from Dr. Riegel dated June 28, 2011 reveal continued neck and low back pain. (Tr. 449). He also noted bilateral elbow and hand pain. Examination revealed osteoarthritis affecting the left thumb at the IP joint. He was told to refill Percocet and was prescribed Flexeril. *Id.*

On June 28, 2011, Dr. Riegel completed a treating orthopedic questionnaire. (Tr. 379-380). Plaintiff was diagnosed with lumbar and thoracic sprain/strain, neck pain, bulging disc at L4-5 and osteoarthritis, and bilateral lower extremity lumbar radiculopathy. His symptoms included decreased grip strength, chronic pain, radiculopathy, soft tissue injury, and limited range of motion thoracic and lumbar spine. Grip strength was 4/5 and lower extremity strength was decreased at 4/5. He was not capable of performing fine/gross manipulations on a sustained basis due to suspected osteoarthritis of both elbows and hands. *Id.* Dr. Riegel did not cite any imaging results related to Plaintiff's cervical spine of upper extremities, he found that Plaintiff's lower extremity

- 12 -

strength was 4/5, and he opined that  Plaintiff did not require a hand-held assistive device to ambulate. ( Tr. 379-80).   He did cite to  EMG/NCS studies of the bilateral lower extremities as far as lumbar radiculopathy.   ( Tr. 379).

At  the  request  of  the  state  disability  agency,  on  July  7,  2011,  Dr.  Robert  Shefsky examined Plaintiff. (Tr. 439-445). Plaintiff reported constant pain that he rated as a six  out of ten. His pain worsened with over-activity, walking too long, and driving too long. He did not do housework. Examination revealed he could not walk on his heels and toes without difficulty  and could not do a full squat. He had decreased flexion, extension and lateral flexion and rotation bilaterally of the lumbar spine and decreased supination of the right elbow. Dr. Sheksky found that Plaintiff had a normal gait and normal stance, and he noted no abnormal neurological findings. (Tr. 440-41).   Plaintiff needed no help changing for the exam  or getting on or off the exam table, and Plaintiff reported that he could shower and dress  without assistance. ( Tr. 439-40). Plaintiff told Dr. Shefsky that he could shower and dress without assistance. (Tr. 439-40).   Dr. Shefsky found that Plaintiff had no sensory deficits, full  5/5 strength in his upper and lower extremities, no evident muscle atrophy, intact hand and  finger dexterity, and full 5/5 grip strength bilaterally. ( Tr. 441).   Dr. Shefsky found  that Plaintiff had full range of motion of his cervical spine, shoulders, wrists, and hands.  (Tr. 440-45).   Dr. Shefsky concluded that Plaintiff's prognosis appeared to be stable.  (Tr. 441).   He was  diagnosed with low back pain, right elbow pain, and hand and neck pain by history.  *Id*.

On August 4, 2011, state agency physician Dr. Edmund Molis, after reviewing the evidence  that  had  been  developed  by  the  state  disability  agency  at  the  initial  and reconsideration levels, including Dr. Shefsky's findings, opined that Plaintiff was limited to lifting 20 pounds occasionally, ten pounds frequently; could stand/walk/ and sit for up to six

hours in an eight hour day; frequently climb ramps/stairs, balance, kneel and crouch; occasionally stoop; occasionally climb ladders/ropes and scaffolds; and had no limitation in his ability to push/pull, no manipulative limitations, and could perform a reduced range of light work. ( Tr. 60-63). From August 2011 through December 2012, Dr. Riegel continued to treat Plaintiff. (Tr. 447-461). On August 10, 2011, Plaintiff reported a flare up of low back pain. ( Tr. 448). He still had neck pain that he rated as a six out of ten and examination revealed tenderness and muscle spasms. He was given an injection of Decadron and was told to refill Percocet and Flexeril. *Id.* On August 18, 2011, Plaintiff reported his pain as moderate. (Tr. 447). Plaintiff told Dr. Riegel that he was applying for disability and Dr. Riegel supported his pursuit. *Id.*

On August 18, 2011, Dr. Riegel completed a spinal questionnaire regarding Plaintiff. (Tr. 453-459). Plaintiff was treated monthly from February 2010 to the date of the assessment for low and mid back pain, myofascial pain syndrome, and thoracic and lumbar sprain. His prognosis was poor and an EMG indicated lumbar radiculopathy. Plaintiff had limited cervical and lumbar range of motion as well as lumbar and cervical tenderness, muscle spasm, sensory loss, and reflex changes. He did not identify any abnormal cervical spine laboratory or imaging results, and he opined that Plaintiff had no cervical muscle atrophy or weakness. (Tr. 453-55). Examination also revealed lumbar muscle atrophy and weakness, abnormal gait, and trigger points of the thoracic and lumbar spine, and as well as positive straight leg raising test of the left and right. Plaintiff suffered from disabling mid and low back pain and lumbar radiculopathy. His pain was severe and constant and activity led to pain. Medication had not completely relieved his pain and he could only sit for one hour and stand or walk an hour or less in an eight hour workday. Plaintiff should not sit continuously in a work setting and needed to get up and move around every fifteen minutes for fifteen minutes before he could sit again. Dr. Riegel added

that Plaintiff should not stand or walk continuously in a work setting and could only occasionally lift and carry ten pounds. His experience of pain would frequently and constantly be severe enough to interfere with attention and concentration. Plaintiff was capable of low stress jobs and was not a malingerer. He would need to take unscheduled breaks hourly for fifteen minutes before returning to work. His condition interfered with his ability to keep his neck in a constant position, like looking at a computer screen or looking down at a desk. He could not do these jobs full time on a sustained basis. His impairments were likely to produce good and bad days and he would likely be absent from work more than three times a month due to treatment or his impairments. Plaintiff could not perform any pushing, pulling, kneeling, bending or stooping and these limitations applied as of 2007. He was at MMI on March 16, 2010 and was permanently and totally disabled. *Id*.

Dr. Riegel's treatment notes show that on seven occasions between February 2010 and August 2011, Plaintiff rated his pain as being above a 5 on a scale of 0-10, and on other occasions, he rated his pain as being between a 2 and a 4. ( Tr. 261, 266, 270, 272, 273, 276-77, 282, 284, 287, 332, 334, 340, 343, 347, 381, 447-48). Dr. Riegel's treatment notes also frequently indicated that Plaintiff: (1) had mild/low-grade disc abnormalities, (Tr. 257, 261, 268, 280, 287, 340, 347); and (2) had full 5/5 motor strength bilaterally, grossly intact sensation, negative straight leg raising (SLR) tests, and a normal gait. (Tr. 261, 267, 343, 347). Plaintiff was still reporting pain despite being prescribed Percocet and sometimes other medications by Dr. Riegel at these office visits. ( Tr. 255, 257, 258, 262, 268, 270, 273, 282, 287, 332, 334-335, 337, 340, 351, 384). On some visits, Plaintiff reported his pain levels as "moderate to high," "high," or was having a flare. ( Tr. 257, 270, 284). His pain level was a 7 in March 2011 and a 10 in May 2011. ( Tr. 332, 335).

On June 28, 2011, his pain levels were a 6 and he was reporting pain in his neck, low back, bilateral elbows and hand pain.   ( Tr. 381).

On June 15, 2012 and December 18, 2012, Dr. Riegel prepared follow-up statements regarding Plaintiff's condition. (Tr. 460).   Plaintiff testified that he was treated the day  before the hearing by Dr. Riegel and that he was seen by Dr. Riegel once a month to get his prescriptions filled.  (Tr. 37). Dr. Riegel's progress notes dated after August 2011 are not  contained in the administrative record.  Plaintiff suffered from chronic mid and low back  pain as well as left lumbar radiculopathy. He had undergone rehabilitation and pain  medications and was  medically unable to work. Dr. Riegel stated that his professional opinion expressed on the form dated August 18, 2011 remained unchanged. Due to his  multiple conditions, Plaintiff was unable to sustain full time employment on a reliable  consistent basis even of a sedentary nature. *Id.*

## III.    Analysis

Plaintiff raises two issues on appeal:  (1) whether the ALJ erred by failing to articulate good cause for not crediting the treating opinion of Dr. Riegel; and (2) whether the ALJ erred by failing to properly analyze Plaintiff's left upper extremity.

The Court begins with the first issue.  Plaintiff argues that the ALJ erred by failing to articulate good cause for not crediting the opinion of Bram Reigel, M.D.  (Doc. 17 p. 18).  Plaintiff contends that contrary to the ALJ's findings, Dr. Reigel's progress notes are consistent with his opinion and are consistent with the many opinions rendered during the pendency of Plaintiff's workers' compensation claim.  (Doc.17 p. 23).  According to Plaintiff, the ALJ discredited Dr. Reigel's opinion because the ALJ fundamentally disagreed that the objective findings in the record would cause the limitations opined by Dr. Riegel, thus erroneously substituting his opinion for that of a medical expert.  (Doc. 17 p. 25).

In response, Defendant argues that the ALJ accorded proper weight to Dr. Reigel's opinions as they were inconsistent with the evidence of record, were inconsistent with the modest objective signs and findings, and with Plaintiff's conservative care and gaps in his medical treatment.  (Doc. 17 p. 31).

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error."  *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted).  The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor.  *Winschel v. Commissioner of Social Security,* 631 F.3d 1176, 1178-79 (11th Cir. 2011).  Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence."  *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

If an ALJ concludes that the medical opinion of a treating physician should be given less than substantial or considerable weight, the ALJ must clearly articulate reasons showing "good cause" for discounting it.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  The Eleventh Circuit has concluded that good cause exists when the: "treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004).

In his decision, the ALJ explained his decision to discount the opinion of Dr. Riegel as follows:

> Likewise, the undersigned gives little weight to the 2008 statements from Dr. Rabinovici indicating the claimant was "unable to work" (Exhibit 1F), as this assessment too is not consistent with the evidence. Dr. Riegel has offered many, many statements that the claimant's purports supports his allegations. Yet, Dr. Riegel's opinions cannot be given great deference for the same reasons. At one time, Dr. Riegel even offers and assessment that seems to suggest that the claimant has issues with his upper extremities, though this is quite clearly inconsistent with the evidence as a whole (Exhibit 5F, 9F, 10F, and 11F). Instead, the undersigned gives considerable weight to the well reasoned State agency assessment at Exhibit 4A, as this opinion is most consistent with the record evidence.

(Tr. 17).

As a treating physician, Dr. Reigel's opinions were entitled to considerable or substantial weight unless the ALJ articulated good cause for discounting them. In his decision, the ALJ articulated two main reasons for discounting the opinion of Dr. Riegel. The ALJ's first reason is that Dr. Riegel's opinions are not consistent with the medical evidence of record. (Tr. 17). The Court finds that this conclusory finding is not supported by substantial evidence. As summarized above, the record indicates that Dr. Riegel treated Plaintiff commencing in February 2010. (Tr. 265-269). Examination revealed varying degrees of tenderness and muscle spasms, overlying thoracic paraspinals bilaterally, right parascapular muscle group, lumbosacral paraspinals bilaterally, and PSIS bilaterally with soft tissue palpation. He was diagnosed with cervical, strain, improved, thoracic, lumbar and right parascapular strain partially improved. He was referred for MRIs and his Percocet was refilled. He was advised to be limited to a sedentary work status with a lifting limit of ten pounds and no repetitive bending, stooping, squatting, or exposure to vibration with position changes as needed.

Plaintiff was still experiencing low back pain and mid back and right parascapular pain as of March 15, 2010. (Tr. 261-262). Imaging studies from February 17, 2010 showed endplate

- 18 -

abnormalities at T1-T2 consisting of increased T1 and T2 signal seen near the T11-T12 intervertebral disc space. A repeat MRI of the lumbar spine showed disc bulging at L4-5 and disc dessication at L4-5. He was told to continue on Percocet and his work status remained unchanged. *Id*. Plaintiff continued to treat with Dr. Riegel from May 10, 2010 to June 2010. (Tr. 273-274, 276-278). His work status remained unchanged and he was told to continue on Percocet and treatment with Dr. Simon. *Id*. Examination on July 9, 2010 revealed a flare up of his mid and low back pain as well as neck and shoulder pain. (Tr. 273-274). Examination revealed tenderness and muscle spasm over the left cervical paraspinals and left trapezial muscle group. He was given an injection of Toradol and prescribed Percocet and Toradol. *Id*. Plaintiff described increased neck pain as of August 2010. (Tr. 270-271). Examination revealed cervical paraspinal tenderness and spasms and he was diagnosed with cervical sprain and myofascial pain syndrome. He also reported radiation of pain down the left arm and was prescribed Soma and Percocet. *Id*.

Cervical spine x-rays taken in August 2010 showed straightening of the cervical lordosis, disc space narrowing at C3-4, disc space narrowing and anterior spondylosis at C5-6. (Tr. 257-258). A shoulder x-ray revealed an osteophyte projecting off the inferior surface of the AC joint. He was told to stop the Soma, was started on Flexeril, and was advised to increase his Percocet dose. *Id*. Despite the increased medication, progress notes dated September 24, 2010 still revealed occasional numbness and tingling as well as continued back and shoulder pain. (Tr. 343). Plaintiff fell and reinjured his low back as of October 7, 2010. He was told to increase his Percocet dose, to stop the Flexeril and Marinol, and was started on Zanaflex. *Id*. Plaintiff told Dr. Riegel that he no longer had insurance in November 2010 but continued to have back pain. (Tr. 285). On December 22, 2010, he reported a flare up of left shoulder blade pain. (Tr. 284). He had a moderate to high pain level and was told to continue on increased dose of Percocet. *Id*.

Dr. Riegel continued to treat Plaintiff from March 2011 through June 2011. (Tr. 255, 282, 379-380, 449). Plaintiff had a flare-up of his back pain in May 2011. (Tr. 332). He rated his pain as a ten out of ten. On examination, Plaintiff had pronounced tenderness and muscle spasms over the lumbar area. He was started on a Medrol dosepak. *Id.* Progress notes from Dr. Riegel dated June 28, 2011 reveal continued neck and low back pain. (Tr. 449). He also noted bilateral elbow and hand pain. Examination revealed osteoarthritis affecting the left thumb at the IP joint.

The ALJ also discredited the opinion of Dr. Riegel on the basis that Dr. Riegel's assessment that Plaintiff has issues with his upper extremities, "is quite clearly inconsistent with the evidence as a whole." (Tr. 17). Again, the ALJ failed to articulate with specificity how Dr. Riegel's assessment is inconsistent with the evidence. Despite this finding, the record demonstrates that Plaintiff had been suffering from left shoulder/left upper extremity issues for an extended period of time. (Tr. 257-58, 260, 361-63, 365, 368, 380-81, 392). Dr. Riegel's opinion was supported by the record. The ALJ's conclusory finding to the contrary, unsupported by citations to the record, is insufficient to discredit the opinion of Plaintiff's treating physician.

While the Commissioner presents numerous arguments to support the ALJ's decision to discount the Dr. Riegel's opinion, the Court refrains from accepting the *post hoc* reasoning to justify the ALJ's decision. *See Baker v. Comm'r of Soc. Sec.*, 384 F. App'x 893, 896 (11th Cir. 2010). Upon remand, the Court will require the ALJ to reevaluate the opinions from Dr. Riegel and, if he chooses to discount his opinions, articulate good cause supported by substantial evidence for doing so. As the ALJ's reevaluation of Dr. Riegel's opinion may affect his findings concerning Plaintiff's left upper extremity impairment and cervical spine condition, the Court will defer from addressing Plaintiff's second issue at this time.

**IV.     Conclusion**

The decision of the Commissioner is **REVERSED AND REMANDED**.  The Clerk of the

Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on February 25, 2016.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties